BURGIN, Respondent, vs. DEUEL, Appellant.

*January 16—May 11, 1926.*

*Mandamus: To compel school treasurer to pay orders for transporting children: Unliquidated claims not determined in mandamus: Proper legal remedy: Necessary parties.*

1. *Mandamus* is not the proper remedy to compel the treasurer of a school district to pay orders for the transportation of school children under an alleged contract with the plaintiff, after the discharge of one W., who had contracted to transport such children and who was continuing ostensibly to perform his contract, where neither W. nor the school district, which was confronted with a double liability for such transportation, was interpleaded.   p. 651.

2. *Mandamus* is an extraordinary legal remedy and must be based on a clear and specific legal right which is free from substantial doubt, and the relief prayed for must be just and untainted by fraud or collusion.   It will not lie to compel the payment of an unliquidated claim.   p. 651.

3. *It seems* that an action on contract against the school district to recover the sum agreed to be paid, wherein plaintiff and W. are brought in, is the proper legal remedy.   p. 651.

APPEAL from a judgment of the circuit court for Taylor county: G. N. RISJORD, Circuit Judge.   *Reversed.*

The appeal is from a judgment in plaintiff's favor, directing the issuance of a peremptory writ of *mandamus* commanding the defendant, the treasurer of the school district, to pay certain school orders.

For the appellant there was a brief by *Alexander Wiley* and *Robert L. Wiley*, both of Chippewa Falls, and oral argument by *Alexander Wiley*.

*Herman Leicht* of Medford, for the respondent.

The following opinion was filed February 9, 1926:

DOERFLER, J.   Sec. 40.16 of the Statutes provides for the transportation of school children attending the district schools, under certain conditions, and for the payment of such transportation.

In July, 1924, at the annual meeting of the school district, transportation of certain children residing in the district was authorized, and a certain route was definitely selected, known as route 4, beginning at the east end of what is known as the Douglas road, and continuing on the main traveled highway to the schoolhouse. The district board, pursuant to the action of the school meeting, entered into a contract with one Wallace to transport the children along the route above indicated. Instead of complying strictly with the terms of his contract, Wallace, both before the session of the school and after its close, deviated from this route about half a mile or more to accommodate certain children of the district, and this deviation, in the month of December, 1924, created some bad blood in the district, which resulted in protests to the board, the claim being made that such deviation caused a loss of time and inconvenience to a large number of children transported.

It also appears that during the month of December only two members of the district board were in office, the treasurer of the board having resigned. The clerk and the director of the board considered these protests and cautioned Wallace to desist from deviating from the contract route, and, failing to obtain the desired results, they agreed informally to discharge him and to let the contract to another. A representative of the state superintendent's office was consulted by two of the members of the board, and he advised the holding of another meeting for the purpose of taking formal action aiming at the discharge of Wallace and the selection of a new man to take his place. This meeting was called in January, 1925, and all of the members of the board, including the newly appointed treasurer (the defendant herein), were present.

It must also be stated here that the representative of the state school superintendent expressed his doubt as to whether Wallace could be legally discharged and as to whether the

deviation was of such a substantial nature as to constitute a violation of his contract. However, in the January meeting the school district officers considered the matter informally and agreed among themselves to notify Wallace of his discharge, which notice was signed by all of the officers and served. No vote was taken by the officers of the board nor did the clerk record the action upon the minutes.

A contract was then entered into with the plaintiff, and he continued to transport children along' the designated route until the end of the school year, and during such period school orders were periodically issued to him, which he presented to the defendant as school treasurer for payment, but which the latter refused to recognize or pay. To enforce the payment of these orders the plaintiff brought the *mandamus* action herein referred to.

Wallace, claiming that he had not violated the provisions of his contract, secured an old bus belonging to the district and continued to transport some of the children in the same manner as he had done earlier in the school year. Both the plaintiff and Wallace, it seems, make the claim that they are entitled to compensation. The defendant in his answer prayed that Wallace might be interpleaded so that the rights of all parties interested could be determined in one action. The school district, which is vitally interested in the matter, and which is called upon to pay doubly, was not made a party.

When the electors at the school district meeting in July, 1924, pursuant to the provisions of sec. 40.16 of the Statutes, authorized the contract providing for the transportation of school children, they had in mind one contract, and not two contracts; they had in mind the payment of one bill for transportation, and not two bills. While it is true that the school board, having entered into the contract, could, for proper cause, discharge the contractee and thereafter enter into a new contract, thus entailing but one bill for

transportation purposes, the question here presented is not entirely clear as to whether or not Wallace was guilty of such a violation of the spirit of his contract as would warrant his discharge. In any event, he refused to recognize the discharge and continued ostensibly to perform.

The school district is confronted with a double liability, and it is not before the court so that its rights may be determined; nor was Wallace interpleaded. Under such circumstances, can it be said that the remedy by *mandamus* is the proper one in this case? It would appear to us that an action on contract to recover the amount agreed upon, against the school district, would have constituted the proper proceeding, and in such action both the plaintiff and Wallace should be brought in, so that the rights of all parties would be before the court to be determined. *"Mandamus* is an extraordinary legal remedy and must be based upon a clear and specific legal right which is free from substantial doubt, and the relief prayed for must be just, and untainted by fraud or collusion." 26 Cyc. 306. On the same page of the authority cited it is also said: *"Mandamus* will not lie to compel payment of an unliquidated claim until the validity of the claim and the amount due shall have been definitely ascertained."

The law as thus stated meets with our approval, and we therefore hold that *mandamus* is not the proper legal remedy in this case.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to dismiss the proceeding.

A motion for a rehearing was denied, with $25 costs, on May 11, 1926.