WALKER and wife, Appellants, vs. GREEN LAKE COUNTY, Respondent.

*February 7—March 8, 1955.*

104

106

For the appellants there was a brief and oral argument by *Robert C. Born* of Ripon, attorney, and *Arthur W. Lueck* of Beaver Dam of counsel.

For the respondent there was a brief and oral argument by *J. J. McMonigal,* district attorney.

BROADFOOT, J.  In support of its judgment the county contends upon this appeal that the plaintiffs had the burden of proving their title to land capable of being described and located with reasonable certainty; that they failed to do so and that Swan Point can neither be located by a survey nor described by metes and bounds.  In ascertaining the boundaries of land conveyed, the real intention of the parties is to be gathered from the entire writing and when necessary from the surrounding circumstances. *Sanborn v. Miski,* 190 Wis. 513, 209 N. W. 759; *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 187 N. W. 978.  Parol evidence may be received to identify the land to be conveyed where there is some language in the writing to which parol evidence can be linked and the property identified with reasonable certainty. *Spence v. Frantz,* 195 Wis. 69, 70, 217 N. W. 700.  The *Spence Case* involved a contract to convey "the following described land: Contained in Stone's subdivision in sections nine (9), and ten (10) in the town of Greenfield, consisting of one hundred and ten acres (110), more or less, said acreage to

be determined by survey." That was held to be a sufficient description with the aid of parol testimony.

The description in a deed is certain if it may be made certain by reference to other documents as well as by parol evidence. In this case the tax deed from the county referred to the plat of Forest Glen Beach, which was duly recorded in the office of the register of deeds in said county. Although the part thereof delineated "Swan Point" was not a part of the plat, it did establish the south line of Swan Point to be the north line of Forest Glen Beach, which could be readily located by a survey. It also established that the east line of Swan Point was the section line between sections 34 and 35. The map showed that at the north the east line would intersect the shore line of Green Lake as it existed in 1898, and that the north and west boundaries thereof were the lakeshore as it then existed. A surveyor did locate the description sufficiently, except that he referred to the original meander line of Green Lake, which was not indicated upon the plat of Forest Glen Beach. The lines delineated thereon were the lakeshore as it existed in 1898, which, because of the raise of the level in the lake, was different than the original meander line.

The county and the trial court seem to be of the opinion that the plaintiffs must locate land that was not submerged. If any one could challenge title to the submerged land it would be the state of Wisconsin, and the state was not a party to this action. Under the rule laid down in *Haase v. Kingston Co-operative Creamery Asso.* 212 Wis. 585, 250 N. W. 444, the county would be in no position to challenge the title of the plaintiffs to the submerged lands not occupied by its highway. The description given by the surveyor for the plaintiffs, if amended as herein indicated, would be a sufficient description as against any claim of the county. We are passing here only on the rights of the parties to this action.

The county next contends that it gained full legal title to the lands occupied by the highway by user and adverse possession. The fee to a highway remains in the abutting owner. *Hustisford v. Knuth,* 190 Wis. 495, 209 N. W. 687; *Spence v. Frantz, supra; St. Joseph v. Willow River Power Co.* 205 Wis. 231, 237 N. W. 83. This rule is also stated in 25 Am. Jur., Highways, p. 426, sec. 132, as follows:

"In the absence of a statute expressly providing for the acquisition of the fee, or of a deed from the owner expressly conveying the fee, when a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner."

It is also stated in 39 C. J. S., Highways, p. 937, sec. 19, as follows:

"When it is of such character and for such length of time as to establish a highway by prescription or long user, user of land as a highway vests in the public an easement in, or right to use, the land for highway purposes."

Thus, the county does not have a full legal title to the highway but merely an easement for public travel. The fee to that part of County Trunk A adjacent to the lands of the plaintiffs is in the plaintiffs.

Sec. 80.01, Stats., provides that all highways laid out by a committee of the county board and recorded, any portion of which has been opened and worked for three years, are legal highways so far as they have been so opened and worked. Sub. (2) thereof provides that highways not recorded which have been worked as public highways ten years or more are public highways. In the case of the highway constructed in 1926 and 1927 the county, with the aid of the state highway commission, laid out a road three rods in width, as indicated by the blueprint thereof which was made a part of the record herein. A plan was also drawn for the

extension. The record does not show whether either plan was recorded. If so, they became highways at the end of three years; if unrecorded, at the end of ten years, as they were opened and worked by the public for more than ten years prior to the commencement of the action. This is a sufficient laying out of the highway as stated in *Jacobosky v. Ahnapee,* 244 Wis. 640, 13 N. W. (2d) 72. Since the road was laid out as a three-rod road the court was in error in determining that it was a four-rod road. Actually, it only covers approximately three rods, and its limits are as now used for highway purposes.

The plaintiffs contend that the extension to the highway is not a highway but is merely an area for parking cars and for recreational purposes. They contend that highways are limited to roads for the free and unobstructed passage of vehicles in each direction. It is true that the original definitions of highways were limited to lands used for the purpose of direct travel. However, the term "highway" may be used in a broader sense. The conception of highways is changing and it is now felt that highways established for the general benefit must admit of new methods of use whenever it is found that the general benefit requires it. For the courts to limit the use of highways without considering new methods and usage would defeat, to some extent at least, the purpose for which highways are established. The extension was constructed for use by the public generally, as well as to protect the original portion of the highway that was actually constructed in 1926 and 1927. We hold, therefore, that the extension is a part of County Trunk Highway A and that the county has acquired an easement therein for public use.

From the record it is clear that the plaintiffs own the land upon which the road was constructed, subject to the public easement, and thus have rights in the submerged lands west of the highway, one of which is the right to erect and maintain a pier and boat landing thereon. *Bond v. Wojahn,* post.

p. 235, 69 N. W. (2d) 258. They have the same right to travel from their property east of the highway to this dock or boat landing as does the public generally. They may not, however, interfere with the use of the highway, as now laid out, by the public generally.

The judgment, in so far as it determines the line between the towns of Green Lake and Brooklyn, is affirmed. In other respects the judgment is reversed.

*By the Court.*—Judgment affirmed in part and reversed in part. Cause remanded with directions to enter a judgment consistent with this opinion.